## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| THE BOARD OF TRUSTEES OF THE UNITED FURNITURE WORKERS PENSION FUND A, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. _____ |
| VENTOUX INDUSTRIAL HOLDINGS, LLC and VENTOUX PARTNERS, LLC, | ) ) ) | |
| Defendants | ) ) ) | |

## **COMPLAINT**

1.       This is an action by the Board of Trustees ("Board") of the United Furniture

Workers Pension Fund A ("Plan") as a fiduciary of the Plan, on behalf of the Plan, to collect

unpaid pension contributions and withdrawal liability owed to the Plan by Defendants as an

employer, respectively, within the meaning of Title I and Title IV of the Employee Retirement

Income Security Act of 1974, as amended ("ERISA"), and the Multi-Employer Pension Plan

Amendments Act of 1980 ("MPPAA"), and pursuant to an express assumption of liabilities owed

to the Plan by Klise Manufacturing Company ("Klise") that Defendant Ventoux Partners, LLC

("Ventoux Partners") agreed to in an agreement to purchase Klise stock.  Plaintiff seeks payment

of withdrawal liability, interest on that unpaid amount, liquidated damages as provided by law,

and the attorneys' fees and costs of this action from Defendants; payment of unpaid

contributions, interest on that unpaid amount, liquidated damages as provided by law, and the

attorneys' fees and costs of this action from Defendants; and such other and further legal and equitable relief as this Court deems appropriate.

## Jurisdiction and Venue

2.      This Court has jurisdiction over the subject matter of this action pursuant to Sections 502(e)(1), 502(f) and 4301(c) of ERISA, 29 U.S.C. Sections 1132(e)(1), 1132(f) and 1451(c), in that this is an action by a fiduciary of the Plan to compel an employer to pay contributions and withdrawal liability pursuant to ERISA Sections 515 and 4301(b), 29 U.S.C. Sections 1145 and 1451(b).  This Court also has jurisdiction over the subject matter of this action pursuant to Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. Section 185, in that this is an action to enforce the terms of an agreement between an employer and a labor organization that Ventoux Partners assumed.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. Section 1367 of the Plan's alternative breach of contract claim under Michigan law as the third-party beneficiary of Ventoux Partners' agreement to purchase Klise stock.

3.      Venue is based on the district in which Defendants reside or do business, the District of Massachusetts, pursuant to 29 U.S.C. Sections 1132(e)(2) and 1451(d).

## Parties

4.      The Board of Trustees of the Plan ("Board") is a fiduciary to the Plan.

5.      The Plan is an "employee pension benefit plan" within the meaning of ERISA Section 3(2), 29 U.S.C. Sections 1002(2), in that it was established by an employee organization, and it is maintained for the purpose of providing its participants and beneficiaries with retirement income.

6.      The Plan is a "multi-employer plan" within the meaning of ERISA Section 3(37)(A), 29 U.S.C. Section 1002(37)(A), and ERISA Section 4001(a)(3), 29 U.S.C. Section 1301(a)(3), in that more than one employer is required to contribute to the Plan, and the Plan is maintained pursuant to collective bargaining agreements between one or more employee organizations and more than one employer.

7.      The Board is the sponsor of the Plan within the meaning of ERISA Section 4001(a)(10), 29 U.S.C. Section 1301(a)(10).

8.      The Plan was established and is governed by an Agreement and Declaration of Trust adopted as of October 10, 1962, and as amended from time to time since then (the "Trust Agreement").

9.      The Plan is administered in Nashville, Tennessee.

10.     Upon information and belief, Defendant Ventoux Partners, at all relevant times, was a New Mexico limited liability company, with its principal place of business located at 211 North Street, Northampton, Massachusetts, engaged in the business of managing, developing and acquiring manufacturing and industrial businesses.

11.     Upon information and belief, Defendant Ventoux Industrial Holdings, LLC ("Ventoux Holdings," and together with Ventoux Partners, either "Defendants" or "Ventoux"), at all relevant times, was a Massachusetts limited liability company, with its principal place of business located at 211 North Street, Northampton, Massachusetts, engaged in the business of managing, developing and acquiring manufacturing and industrial businesses.

12.     As of January 2020, the website of Ventoux Partners stated: "Thank you for visiting the website for Ventoux Partners, LLC.  We have changed our name and moved our website to more properly reflect our business focus on acquiring manufacturing and industrial

businesses throughout the US . . . . Please click to continue on to ventouxholdings.com," which is the website of Ventoux Holdings.

13.     Upon information and belief, Ventoux Partners and Ventoux Holdings have had and continue to have common managing partners, including Harry Greenhouse and Gregory Wales.

14.     Upon information and belief, Ventoux Partners and Ventoux Holdings have operated and continue to operate out of the same location on North Street in Northampton, Massachusetts, and have shared and continue to share the same telephone number.

15.     Upon information and belief, Ventoux Holdings is engaged in the same or a similar business as the business that Ventoux Partners is currently or had been engaged at all times that are material to the allegations of this Complaint.

16.     Upon information and belief, at all times that are material to the allegations of this Complaint, Ventoux Holdings was aware or, upon reasonable inquiry, should have been aware of the obligations that Ventoux Partners had assumed with respect to the Plan.

17.     Upon information and belief, Ventoux Holdings is either a different name for, or a successor to, Ventoux Partners.

### Defendants' Obligations to the Plan

18.     For many years, Klise was a contributing employer to the Plan pursuant to the terms of a collective bargaining agreement ("CBA") with the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers – Communications Workers of America ("Union").

19.     The CBA, as renewed from time to time, covered all production and maintenance employees of Klise, and required Klise to make contributions to the Plan for work performed by all Union-represented employees of Klise.

20.     The CBA was at all times the sole collective bargaining agreement governing the terms and conditions of employment of Klise employees represented by the Union and the obligation to make contributions to the Plan for the benefit of those Klise employees.

21.     As a contributing employer to the Plan, Klise also executed an adoption agreement with the Plan pursuant to which Klise agreed to make all annual contribution increases required under the Plan's rehabilitation plan ("Rehabilitation Plan").

22.     The Trust Agreement provides that delinquent contributing employers shall be liable to the Plan for interest on the amount of delinquent contributions due and owing at a rate equal to the prime rate of interest plus two (2) percentage points and for liquidated damages in an amount equal to twenty percent (20%) of the unpaid contributions, as well as the Plan's attorneys' fees and costs.

23.     Pursuant to the Trust Agreement, the Plan has adopted rules for the assessment and payment of withdrawal liability obligations entitled Employer Withdrawal Liability Rules & Procedures (the "Rules").  The Rules provide that when the Plan is required to engage in litigation to collect on a withdrawal liability assessment, "the Pension Fund shall be entitled to all remedies permitted by law," including liquidated damages that shall be equal to "20% (or such higher percentage as may be permitted under federal or state law) of the amount owed by the employer, unless the Pension Fund is entitled to a greater sum by a doubling of the interest."

24.     On March 14, 2016, Klise requested from the Plan an estimate of its withdrawal liability in the event that Klise incurred a withdrawal from the Plan.

25.     On April 11, 2016, the Plan notified Klise that its estimated withdrawal liability was $795,792.

26.     Pursuant to the terms of an Agreement for the Purchase and Sale of Stock dated May 19, 2016 ("Stock Purchase Agreement") among Ventoux Partners, the AB Family Rec Trust ("AB Trust"), Klise and the shareholders of Klise, Ventoux Partners and AB Trust, collectively, acquired one hundred percent (100%) of the stock of Klise effective May 19, 2016 (the "Closing Date").

27.     In Section 3.6 of the Stock Purchase Agreement, Ventoux Partners and AB Trust, "jointly and severally," consented "to the assumption of any and all obligations and liabilities related to the United Furniture Workers Pension Fund attributable to [Klise] and Klise Realty Associates, LLC."

28.     In Section 5.2 of the Stock Purchase Agreement, Ventoux Partners agreed it shall assume "any and all obligations under the Collective Bargaining Agreement (the "CBA") with the United Furniture Workers of the IUE – CWA ("Union") as entered into by the Sellers and the Union terminating April 30, 2017," and that it  will (a) "submit timely contributions to the United Furniture Workers Pension Fund as required under the CBA, until such time as the Buyers and the Union agree to cease contributions" and (b) "accept and comply with the terms of the Trust Agreement of the Fund with regard to (i) all future contributions required under the CBA and (ii) all accrued liabilities of the Company, the Sellers and Klise Realty Associates, LLC under the CBA as of the Closing Date," which "are estimated to total $796,730."

29.     The description in the Stock Purchase Agreement of "the Collective Bargaining Agreement (the "CBA") with the United Furniture Workers of the IUE – CWA ("Union") as entered into by the Sellers and the Union terminating April 30, 2017" mistakenly referred to "the

Sellers" (who are defined in the Stock Purchase Agreement as the owners of Klise), rather than Klise, as the employer party to the CBA, and the parties to the Stock Purchase Agreement all intended to refer to Klise as the employer party to the CBA, because at all times the CBA was the sole collective bargaining agreement governing the terms and conditions of employment of Klise employees represented by the Union, including the obligation to make contributions to the Plan for the benefit of those Klise employees, and the parties knew and understood that there was no agreement between "Sellers" and the Union.

30.     On information and belief, the mistaken reference to "the Sellers" arose from the circumstances that the transaction to sell Klise was originally structured as an asset sale transaction, in which Klise would have been the seller of the assets, and then restructured as a stock sale transaction in which the Sellers were defined in the Stock Purchase Agreement as the owners of Klise stock, but the drafters of the Stock Purchase Agreement failed to identify Klise as the employer party to the CBA.

31.     For a period of time following the Closing Date, Klise continued to make contributions to the Plan pursuant to the CBA.

32.     On or about June 5, 2017, Klise and the Union extended the CBA through April 30, 2020.

33.     Beginning in July 2017, Klise failed to make its pension contributions to the Plan when due.

34.     Thereafter, for the following 13 months, through August 2018, Klise failed to make any contributions to the Plan as required under the CBA and the Rehabilitation Plan (the "Unpaid Contributions Period").

35.     In or about September 2018, the Plan was advised that Klise had ceased its operations and terminated the employment of all of its employees.

36.     By letter dated November 8, 2018, the Board assessed a complete withdrawal liability against Klise in the amount of $538,640, payable in 80 quarter-annual installments of $6,733 ("Assessment") commencing on January 1, 2019.

37.     By letter dated December 21, 2018, Klise filed a request for review of the Assessment pursuant to ERISA Section 4219(b)(2)(A).

38.     By letter dated March 5, 2019, the Board informed Klise that there was no basis to revise the Assessment, and that if no payment of the scheduled Assessment installments was received by May 5, 2019, then the installment payments due and owing to the Plan under the Assessment would be accelerated and Klise's withdrawal liability to the Plan would be due immediately.

39.     Klise never made any payment of the Assessment.

40.     Klise never commenced an arbitration to challenge the Assessment.

41.     In the meantime, by letter dated February 14, 2019, the Board notified Klise Realty Associates ("KRA") that KRA, as part of a group of businesses under common control with Klise (as described in 29 U.S.C. Section 1301(b)) before the Closing Date, was jointly and severally liable with Klise for the Assessment.

42.     By letter dated March 15, 2019, KRA timely requested a review of the Board's determination that it was liable for the Assessment.

43.     On or about March 25, 2019, KRA made one installment payment on the Assessment in the amount of $6,733.

44.     On June 10, 2019, KRA filed a demand for arbitration contesting its liability for the Assessment (the "KRA Arbitration").

45.     By letter dated August 26, 2019 (the "August 2019 Letter"), the Board notified Ventoux Partners that pursuant to the obligations that it had assumed under the Stock Purchase Agreement, Ventoux Partners is liable to the Plan for the withdrawal liability owed by Klise. Specifically, Ventoux Partners was notified that it was obligated to pay the two installment payments that Klise had failed to make on April 1, 2019 and July 1, 2019, each in the amount of $6,733, within sixty days of that letter, and to make, effective October 1, 2019 and continuing thereafter until the Assessment was satisfied, quarterly payments in the amount of $6,733.

46.     By letter dated October 14, 2019, Ventoux Partners requested review of the assessment against Ventoux Partners.

47.      The Board denied Ventoux Partners' request for review by letter dated November 5, 2019.

48.     On January 3, 2020, Ventoux Holdings and Ventoux Partners filed a demand for arbitration with the American Arbitration Association ("AAA") contesting their liability for the Assessment (the "Ventoux Arbitration").

49.     As of June 19, 2020, the Ventoux Arbitration is an active AAA arbitration, but the parties have not yet agreed on the selection of an arbitrator.

50.     Ventoux Holdings and Ventoux Partners have never made any scheduled installment payments of the Assessment.

51.     Pursuant to a settlement agreement between KRA and the Plan (the "Settlement Agreement"), KRA agreed to withdraw the KRA Arbitration and to make a payment to the Plan with respect to the Assessment in the amount of $175,648.61 (the "KRA Withdrawal Liability

Payment"), consisting of the $6,733 installment payment KRA had made and an additional

$168,915.61, which was paid to the Plan on or about February 28, 2020.

52.     The Settlement Agreement was approved by the arbitrator and the KRA

Arbitration was withdrawn in May 2020.

53.     The Plan determined that as a result of KRA's settlement payment and original

installment payment of $6,733, the net amount of the Assessment payable by Ventoux is now

$362,991.39, which is payable in 53 quarter annual installments of $6,733 that commenced on

April 1, 2019, with a final installment payment of $6,142.39 due on April 1, 2032.

54.     By letter dated June 2, 2020 (the "June 2020 Letter"), the Plan informed

Defendants that as a result of KRA's settlement payment and original installment payment of

$6,733, the net amount of the Assessment payable by Ventoux is now $362,991.39, which is

payable in 53 quarter annual installments of $6,733 that commenced on April 1, 2019, with a

final installment payment of $6,142.39 due on April 1, 2032.

55.     The June 2020 Letter further informed Defendants that if the balance of the five

delinquent unpaid installments, in the total amount of $33,665, is not received by the Plan before

June 17, 2020, then the Plan would commence an action to collect that amount and to compel

continued installment payments through the completion of the Ventoux Arbitration.

## FIRST CLAIM FOR RELIEF:

COLLECTION OF DELINQUENT CONTRIBUTIONS

56.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1

through 22, 24 through 34, 45 and 55 of this Complaint as if fully set forth herein.

57.     Pursuant to Section 9-2 of the CBA and the Rehabilitation Plan, Klise was obligated to make contributions to the Plan every month for each employee who was covered by the CBA.

58.     When the Stock Purchase Agreement became effective on the Closing Date, Ventoux Partners assumed the CBA and the terms of the Rehabilitation Plan pursuant to Sections 3.6 and 5.2 of the Stock Purchase Agreement, and became obligated to make contributions to the Plan pursuant to the CBA and the Rehabilitation Plan.

59.     By assuming the CBA and the Rehabilitation Plan and an obligation to make contributions to the Plan thereunder, Ventoux Partners became an "employer" with respect to the Plan within the meaning of ERISA Section 515, 29 U.S.C. Section 1145.

60.     Klise and Ventoux Partners failed and refused to pay contributions to the Plan for the Unpaid Contributions Period.

61.     Based on the contribution reports submitted by Klise to the Plan immediately preceding July 2017, the Plan estimates that during the Unpaid Contributions Period, Klise's and Ventoux Partners' unpaid contributions to the Plan totaled $21,316.37, plus interest and liquidated damages thereon, and that Klise and Ventoux Partners jointly and severally owe that sum of contributions for the Unpaid Contributions Period (the "Unpaid Contributions").

62.     Ventoux Partners breached the CBA and violated 29 U.S.C. Section 1145 by failing and refusing to pay contributions to the Plan for the Unpaid Contributions Period.

63.     Ventoux Holdings is jointly and severally liable for the Unpaid Contributions either because it is the same entity as described in the website of Ventoux Partners, or because it is a successor to the business of Ventoux Partners.

64.     The August 2019 Letter and the June 2020 Letter notified Defendants of their obligations to make contribution payments for the Unpaid Contributions Period.

65.     The Plan has not received any payment of contributions from either Klise or Ventoux or any other person for the Unpaid Contributions Period.

66.     Pursuant to 29 U.S.C. Section 1132(g)(2) and 1145, the Plan is entitled to payment of contributions from Ventoux in the amount of $21,316.37; interest at a rate equal to prime interest plus two (2) percentage points from the date each contribution payment was due through the date judgment is entered, in the amount of $5,781.93 through May 31, 2020; liquidated damages equal to twenty percent (20%) of the unpaid contributions in the amount of $4,263.27; and the Plan's attorney's fees and costs incurred in this action with respect to this First Claim for Relief.

## SECOND CLAIM OF RELIEF:

### COLLECTION OF UNPAID WITHDRAWAL LIABILITY

67.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 21, 23 through 32, and 35 through 55 of this Complaint as if fully set forth herein.

68.     Because Ventoux Partners became obligated to make contributions to the Plan pursuant to the CBA as of the Closing Date in May 2016, and Klise continued to be obligated to make contributions to the Plan pursuant to the CBA after the Closing Date, pursuant to 29 U.S.C. Sections 1381(a) and 1392(a)(1) both Ventoux Partners and Klise was each an "employer" that was jointly and severally responsible for an assessment of withdrawal liability when Klise and Ventoux Partners permanently ceased all covered operations under the Plan in or about August 2018.

69.     Ventoux Holdings is responsible for the withdrawal liability obligations of Ventoux Partners either because it is the same entity as described in the website of Ventoux Partners, or because it is a successor to the business of Ventoux Partners.

70.     Pursuant to 29 U.S.C. Section 1401(d), Defendants are obligated to make the payments assessed by the Plan until the arbitrator makes a final decision in the Ventoux Arbitration.

71.     Defendants have failed to make the withdrawal liability installment payments scheduled for April 1, 2019, July 1, 2019, October 1, 2019, January 1, 2020, and April 1, 2020, in the total amount of $33,665.

72.     Pursuant to 29 U.S.C. Sections 1132(g)(2), 1145, 1401(d) and 1451(b), the Plan is entitled to payment of delinquent withdrawal liability installment payments in the amount of $33,665; interest at a rate prescribed by 29 C.F.R. Section 4219.32 from the date each installment payment was due through the date judgment is entered; liquidated damages equal to twenty percent (20%) of the unpaid installments in the amount of $6,733; and the Plan's attorney's fees and costs incurred in this action with respect to this Second Claim for Relief.

73.     By their past failure and refusal to make the five (5) withdrawal liability installment payments scheduled during the period April 1, 2019 through April 1, 2020, Defendants have demonstrated that they are unlikely to make the withdrawal liability payments assessed by the Plan through the date the arbitrator makes a final decision in the Ventoux Arbitration unless they are ordered by the Court to make those payments as required by 29 U.S.C. Section 1401(d).

## THIRD CLAIM OF RELIEF:

BREACH OF THIRD-PARTY BENEFICIARY RIGHTS

UNDER THE STOCK PURCHASE AGREEMENT

74. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. Ventoux Partners was a party to the Stock Purchase Agreement, which is a contract among Ventoux Partners, the AB Trust, Klise and the shareholders of Klise.

76. In Sections 3.6 and Section 5.2 of the Stock Purchase Agreement, Ventoux Partners consented to "the assumption of any and all obligations and liabilities related to the United Furniture Workers Pension Fund attributable to the Company [Klise] . . . ," and agreed to "(b) accept and comply with the terms of the Trust Agreement of the Fund with regard to (i) all future contributions required under the CBA and (ii) all accrued liabilities of the Company, the Sellers and Klise Realty Associates, LLC under the CBA as of the Closing Date," which "are estimated to total $796,730."

77. The promises by Ventoux Partners in Section 3.6 of the Stock Purchase Agreement consenting to "the assumption of any and all obligations and liabilities related to the United Furniture Workers Pension Fund attributable to the Company [Klise] . . . ," and in Section 5.2 of the Stock Purchase Agreement agreeing to "(b) accept and comply with the terms of the Trust Agreement of the Fund with regard to (i) all future contributions required under the CBA and (ii) all accrued liabilities of the Company, the Sellers and Klise Realty Associates, LLC under the CBA as of the Closing Date," which "are estimated to total $796,730," were undertaken to do something directly for the benefit of the Plan, and the Plan is therefore a third

party beneficiary of these provisions of the Stock Purchase Agreement pursuant to Michigan Compiled Laws Section 600.1405.

78.     Ventoux Partners has breached Section 3.6 of the Stock Purchase Agreement and Section 5.2 of the Stock Purchase Agreement by failing to pay the Unpaid Contributions owed by Klise to the Plan in the amount of $21,316.37 and Klise's related obligations under the Trust Agreement to pay interest on those delinquent contributions at a rate equal to the prime rate of interest plus two (2) percentage points and for liquidated damages equal to twenty percent (20%) of the Unpaid Contributions, as well as the Plan's attorneys' fees and costs in collecting the Unpaid Contributions.

79.     Ventoux Partners has breached Section 3.6 of the Stock Purchase Agreement and Section 5.2 of the Stock Purchase Agreement by failing to pay the unpaid balance of the accelerated Assessment owed by Klise to the Plan in the amount of $362,991.39 (the "Unpaid Assessment") and Klise's related obligations under the Trust Agreement and the Rules to pay interest on the Unpaid Assessment from January 1, 2019, through the date judgment in this action is entered at a rate prescribed by 29 C.F.R. Section 4219.32, and for liquidated damages equal to twenty percent (20%) of the Unpaid Assessment, as well as the Plan's attorneys' fees and costs in collecting the Unpaid Assessment.

80.     The Plan has been damaged by Ventoux Partners' breaches of the Stock Purchase Agreement in failing to pay the Unpaid Contributions in the amount of $21,316.37, the Unpaid Assessment in the amount of $362,991.39, and all interest and liquidated damages due thereunder pursuant to the Plan's Trust Agreement, the Rules and applicable law.

81.    Ventoux Holdings is responsible for Ventoux Partners' breaches of the Stock Purchase Agreement either because it is the same entity as described in the website of Ventoux Partners, or because it is a successor to the business of Ventoux Partners.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands that judgment be entered against Defendants, jointly and severally:

1.    With respect to the First Claim for Relief, awarding to the Plan pursuant to 29 U.S.C. §§ 1132(g)(2) and 1145:

    (a)    Unpaid contributions in the amount of $21,316.37; and

    (b)    interest on the unpaid contributions withdrawal liability at a rate equal to the prevailing prime rate of interest plus two (2) percentage points from the date each contribution was due through the date judgment is entered; and

    (c)    liquidated damages equal to $4,263.27 (which is 20% of $21,316.37); and

    (d)    the reasonable attorneys' fees and costs of this First Claim for Relief incurred by the Plan.

2.    With respect to the Second Claim for Relief, awarding to the Plan pursuant to 29 U.S.C. §§ 1132(g), 1145,1401(d) and 1451(b):

    (a)    Unpaid withdrawal liability installments in the amount of $33,665; and

    (b)    interest on the withdrawal liability at a rate prescribed by 29 C.F.R. Section 4219.32 from the date each installment was due through the date judgment is entered; and

(c)     liquidated damages equal to $6,733 (which is 20% of $33,665); and

(d)     a permanent injunction ordering timely payments of withdrawal liability installments scheduled to be paid through the date the arbitrator makes a final decision in the Ventoux Arbitration; and

(e)     the reasonable attorneys' fees and costs of this Second Claim for Relief incurred by the Plan.

3.     With respect to the Third Claim for Relief, awarding to the Plan:

(a)     Unpaid contributions owed by Klise in the amount of $21,316.37; and

(b)     interest on the unpaid contributions at a rate equal to the prevailing prime rate of interest plus two (2) percentage points from the date each contribution was due through the date judgment is entered; and

(c)     liquidated damages equal to $4,263.27 (which is 20% of $21,316.37);

(d)     unpaid withdrawal liability owed by Klise in the amount of $362,991.39; and

(e)     interest on the unpaid withdrawal liability amount of $362,991.39 at a rate prescribed by 29 C.F.R. Section 4219.32 from January 1, 2019, through the date judgment is entered; and

(f)     liquidated damages equal to $72,598.28 (which is 20% of $362,991.39).

4.     With respect to all Claims for Relief, granting to the Plan such other and further relief as the Court deems appropriate.

Respectfully submitted,
For the Plaintiff,
THE BOARD OF TRUSTEES OF THE
UNITED FURNITURE WORKERS
PENSION FUND A,
By its local counsel,

_____
Steven Weiss, BBO #545619
Mark J. Esposito, BBO # 672638
Shatz, Schwartz and Fentin, P.C.
1441 Main Street, Suite 1100
Springfield, MA
(413) 737-1131
(413) 736-0375
sweiss@ssfpc.com
mesposito@ssfpc.com

Dated: June 19, 2020

20\0131\Complaint Final for Filing

601225902